# IN THE COURT OF APPEALS

## OF THE

## STATE OF MISSISSIPPI

### NO. 2000-CA-01124-COA

**BILLY WAYNE FRITH AND WANDA FRITH AS PARENTS AND
NATURAL GUARDIANS OF JOSHUA BRENT FRITH, A MINOR**                    **APPELLANTS**

**v.**

**BIC CORPORATION**                                                                                  **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 06/20/2000 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DANA J. SWAN |
| ATTORNEYS FOR APPELLEE: | JAMES D. HOLLAND |
| | D. COLLIER GRAHAM JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT FOR DEFENDANTS |
| DISPOSITION: | AFFIRMED - 4/09/2002 |
| MOTION FOR REHEARING FILED: | 4/23/2002 |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | |

BEFORE KING, P.J., THOMAS, AND MYERS, JJ.

KING, P.J., FOR THE COURT:

¶1. This appeal arises from the Scott County Circuit Court's judgment sustaining the BIC Corporation's (BIC) motion for summary judgment. The trial court determined that the Friths' (Billy Wayne Frith, Wanda Frith as Parents and Natural Guardians of Joshua Brent Frith, a Minor) claims against the BIC Corporation were preempted by safety regulations promulgated pursuant to the Federal Consumer Product Safety Act (CPSA). Aggrieved, the Friths have raised the following issue:

**Whether the CPSA preempts the Plaintiffs' state-based common law claims.**

### FACTS

¶2. On December 19, 1994, Joshua Frith (Joshua), then ten years old, was severely burned when he found a disposable cigarette lighter in his backyard in Morton, Mississippi and attempted to ignite it near a container of gasoline. According to Joshua, the lighter was found as he played alone in his backyard in the drainage ditch behind his house. Joshua cleaned the mud from the lighter and attempted to operate it. In his deposition, Joshua stated that he could not light a flame with the lighter, but that he was able to produce sparks from it. As Joshua walked towards the rear of the house, he continued to strike sparks from the

lighter. A plastic container of gasoline was stored at the rear of the house. As Joshua continued to strike sparks from the lighter, an explosion occurred when he was approximately four to six feet from the container.

¶3. After the accident, the lighter was not recovered. However, Joshua, who claimed the lighter was a BIC, identified an exemplar lighter as the kind that he had at the time of the accident. The lighter identified by Joshua was a J-26 model Child Guard lighter manufactured by BIC.

¶4. Joshua's parents filed suit in the Circuit Court of Scott County, Mississippi against the BIC Corporation, Gott a/k/a Gott Corporation, Rubbermaid Specialty Products, Inc., and the Estate of Eva Odom under negligence and product liability theories. The case was removed to the United States District Court for the Southern District of Mississippi by BIC on the basis of that court's diversity jurisdiction, alleging that Mrs. Odom, a Mississippi resident was fraudulently joined. The Friths filed a motion to remand. In ruling on that motion, United States District Judge William H. Barbour, Jr. determined that the Friths' claims against BIC were preempted by federal law, but that the court lacked removal jurisdiction to enforce preemption because all necessary parties (the Estate of Mrs. Odom) had not joined in the removal.

¶5. After the case was remanded, BIC filed a motion for summary judgment which alleged that the Friths' state-based claims were preempted by federal law. The trial court determined that the Friths' state-based claims were preempted by federal law and granted BIC's motion for summary judgment. From that decision, the Friths perfected this appeal.

## ISSUE AND ANALYSIS

### Whether the CPSA preempts the Plaintiffs' state-based common law claims.

¶6. The Friths contend that there is no express or implied preemption under the CPSA of their state-based claims of negligence and product liability. They contend that the applicable federal statutes do not apply because Joshua was ten years old at the time and the intent of the statute is for "operation by children younger than five years of age." The Friths also maintain that the CPSA contains a savings clause which prohibits express preemption of their state-based claims.

¶7. BIC maintains that the trial court correctly applied the principles of implied conflict preemption found in *Cooper v. General Motors Corp.*, 702 So. 2d 428 (Miss. 1997), and *Geier v. American Honda Motor Co.*, 529 U.S. 861 (U.S. Dist. Col. 2000). The United States District Court Judge for the Southern District of Mississippi also accepted BIC's argument against dual regulation of the same subject by both federal and state law and determined that:

> To apply state or common law standards to the design of the cigarette lighter could subject BIC to two different regulations of the same subject: the federal regulations of the CPSC and the higher common law standard urged by the Plaintiff. Clearly, this was not what Congress intended when it passed the CPSA. The court finds that Plaintiff's cause of action for design defect of the cigarette lighter necessarily 'arises under' federal law and presents a federal question.

¶8. The argument regarding the Supremacy Clause of the U.S. Constitution and the application of preemption was spoken to in *Cooper* which states that:

> The cornerstone of preemption is that a state law which conflicts with the federal law is invalid under

the Supremacy Clause. Federal preemption can occur (1) where Congress explicitly preempts state law, (2) where preemption is implied because Congress has occupied the entire field, or (3) where preemption is implied because there is an actual conflict between federal and state law.

*Cooper,* 702 So. 2d at (¶16).

¶9. It is noted that the CPSA contains a preemption clause, 15 U.S.C.A. § 2075 (a) (1997), which provides:

> Whenever a consumer product safety standard under this chapter is in effect and applies to a risk of injury associated with a consumer product, no [s]tate or political subdivision of a [s]tate shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the Federal standard.

¶10. The Friths suggest that the savings clause in the Safety Act, 15 U.S.C.A. § 2074(a) (1997)[1] and 15 U.S.C.A. § 2072(c) (1997)[2] preclude a broad reading of the Act's preemption provision to include common law claims. They support this position by citing *Colon ex. rel. Molina v. BIC USA, Inc.* 136 F. Supp. 2d 196, 203 (S.D. N.Y. 2000). We note that *Colon* is neither persuasive to nor binding upon this Court. Likewise, we note that the Friths have dropped the pursuit of a common law negligence claim, and are pursuing strict liability under products liability theory.

¶11. The Consumer Product Safety Commission sets standards for disposable and novelty lighters to make them reasonably child resistant. 16 C.F.R. § 1210.1. These requirements are intended to make the lighters subject to the standard's provisions resistant to successful operation by children younger than five years of age. This standard applies to all disposable and novelty lighters, as defined in § 1210.2, that are manufactured or imported after July 12, 1994. 16 C.F.R. § 1210.1.

¶12. Sometimes, depending on the regulation, federal laws or standards may be considered floors, which allow state laws or standards to create a ceiling, so long as they do not conflict. Where there is a conflict, the court must review the law to determine whether preemption is implied. *Cooper,* 702 So. 2d at (¶16). In *Cooper*, the court decided that when determining whether there is implied preemption, the following rule must apply:

> "Implied preemption exists when (1) state law regulates conduct in a field Congress intended the federal government to occupy exclusively [referred to as implied field preemption], or (2) when state law actually conflicts with federal law [referred to as implied conflict preemption]." [*English v. General Electric,* 496 U.S. 72, 79 (1990)]. Implied conflict preemption occurs when it is " 'impossible for a private party to comply with both state and federal requirements, . . . or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"

*Id.* at (¶24). This view of implied preemption is stated in both *Cooper* and *Geier.*

¶13. Having reviewed the relevant statutes and other evidence presented, this Court affirms the trial court's decision that the Friths' state-based claims are preempted by federal law.

¶14. **THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, AND, MYERS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. BRANTLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND CHANDLER, JJ.**

BRANTLEY, J., DISSENTING:

¶15. I respectfully dissent. The savings clause of the Consumer Protection Act states, "[c]ompliance with consumer product safety rules or other rules or orders under this chapter shall not relieve any person from liability at common law or under State statutory law to any other person." 15 U.S.C.A. § 2074 (1991). In my view, failing to apply this savings clause ignores both the letter of the applicable federal regulations as well as the intent of the Consumer Protection Act.

¶16. *Geier* expressly stated that an identically phrased savings clause preserved state causes of actions that "seek to establish greater than the minimum safety achieved by a federal regulation intended to provide a floor." *Geier v. American Honda Co., Inc.*, 529 U.S. 861, 870.(2000). Despite this savings clause, *Geier* held that implied preemption barred a suit in that case where federal regulations provided several safety measure automobile manufacturers could employ, and the plaintiff sought to enforce the air bag safety measure to the exclusion of the others, because allowing a cause of action to mandate only one of several permissible safety measures would have defeated the intent of the regulations to allow an array of safety measures to develop within the marketplace. *Id*. at 881. The majority cites *Geier* for the proposition that implied preemption applies in this case, yet the precedential value of *Geier* is that safety regulations that expressly set a minimum standard are not preempted. *Id*. at 868-870. The regulations at issue in this case mandate that any disposable lighter manufactured must meet a standardized testing criteria involving children under the age of five years old trying to operate the lighters. 16 CFR §§1210.1-1210.20. To pass the testing, the lighters "shall be resistant to successful operation by *at least* 85 percent of the child-test panel when tested in the manner prescribed." 16 C.F.R. § 1210.3 (emphasis added). "At least" is a minimum standard that creates a "floor." Under *Geier*, no preemption should apply to this case.

¶17. Furthermore, implied preemption cannot apply to this case absent a judicial finding that Frith's claim is "an obstacle" to achieving the benefits that the federal regulations aim to accomplish. *See Geier* at 529 U.S. 886. The circuit court did not consider *Geier*, as that opinion did not issue until approximately three weeks before the circuit court's memorandum opinion and order. Moreover, three of the cases that the circuit court did rely upon involved issues of express, not implied, preemption. *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 671 (1993); *Hester v. CTX Transportation, Inc.*, 61 F.3rd 382, 386 (5th Cir. 1998); *Pearson v. Columbus and Greenville Ry. Co.*, 737 So. 2d 390, 401 (¶¶ 40-41) (Miss. Ct. App. 1998). Additionally, the circuit court relied upon *Cooper v. General Motors Corporation*, 702 So. 2d 428 (Miss. 1997), when stating that the savings clause preserves only state actions that are based upon defects "not covered by the federal standard or which were beyond the scope of federal safety regulations." *Cooper* does not stand for this proposition. Rather, *Cooper*, like *Geier*, involved a claim based upon failure to install an air bag in an automobile when federal regulations allowed manufacturers to select one of several safety measures, with air bags being only one of the options. *Id*. at 434. Contrary to the circuit court's reading of *Cooper*, that case stated "[s]ometimes, depending on the regulation, federal laws or

standards can be considered floors, and a state law can create a ceiling, so long as it does not pose a conflict." *Id*. The circuit court found preemption because if Frith prevailed the case would impose "a child resistance standard which would require the subject lighter to preclude 100% of children as old as 10 years from operating said lighters, thus resulting in a standard which is non-identical with the established federal standard and imposing a burden that was not intended." The circuit court's finding of preemption is flawed both factually and legally. Frith's claim was not factually predicated upon a finding that ten-year-old children would never be able to light the lighter 100% of the time. And, the circuit court erred as a matter of law in finding that implied preemption results only from a state action imposing an added burden. There must be a finding that the regulatory scheme cannot exist if the state action simultaneously exists. *Geier* at 529 U.S. 886. Because the circuit court applied the incorrect legal standard, it also failed to make any findings as to the affect on the regulatory scheme from state causes of actions such as Firth's.

¶18. Nevertheless, before this Court, both Frith and BIC correctly frame the issue in terms of a *Geier* analysis. As a public policy argument, BIC asserts that implied preemption must be found because the Consumer Products Safety Commission determined that the 85% safety rate was "a reasonable balance" between protecting children and making the disposable lighters easy to use. BIC admits that if liability were imposed, manufacturers of disposable lighters would be compelled to make safer products. Nevertheless, it contends that this would be contrary to the public policy of the Consumer Protection Act, because safer disposable lighters would be more difficult for adults to use, so adults would be encouraged to use non-regulated, and presumably less safe, products. Aside from the obvious cynicism, this analysis ignores the fact that any coercive affect of potential product liability actions to make safer products would apply to *all* manufacturers of these products, the regulated and non-regulated alike.

¶19. Under the same law and essentially the same facts as these, a federal district court stated:

> Moreover, allowing plaintiffs' claims to go forward is consistent with the stated purposes of the CPSA. The four (4) stated purposes of the CPSA are: 1) [T]o protect the public against unreasonable risks of injury associated with consumer products; (2)[T]o assist consumers in evaluating the comparative safety of consumer products; (3)[T]o develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and (4)[T]o promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries. . . . A national minimum standard for the design, manufacture, and testing of disposable lighters, coupled with the added protection of state common law liability can only further protect the public, especially young children, against unreasonable risks of injury. In addition, the threat of liability under state common law will give manufacturers such as BIC further incentives to research and develop safer products.

*Colon ex rel. Molina v. BIC USA, Inc.*, 136 F. Supp.2d 196, 209 (S.D.N.Y. 2000) (citing *Leipart v. Guardian Indus., Inc*., 234 F.3d 1063, 1070 (9th Cir. 2000).

¶20. The majority finds this reasoning unpersuasive. Nevertheless, *Geier* expressly stated, "occasional nonuniformity is a small price to pay for a system in which juries not only create, but also enforce, safety standards, while providing necessary compensation to victims." *Geier*, 529 U.S. at 871. Implied preemption should not be found simply on the basis that a state cause of action could lead to one state requiring a higher safety standard than a minimum, federally mandated standard. Rather, *Geier* requires that for implied preemption to apply, the state cause of action must take away from the regulatory scheme "the

very ability to achieve the law's congressionally mandated objectives." *Id.* at 872.

¶21. Furthermore, even if the regulations precluded Frith from delving into the lighter's mechanical operations, the regulations do not touch upon much of Frith's claim. Frith was ten-years-old at the time he was injured. The regulations speak to a purposefully designed mechanical difficulty which is designed to defeat five-year-old children at least 85% of the time. Frith's claim arose from the fact that he found a lighter abandoned in a ditch, retrieved it, cleaned it and was thereafter injured. Frith's claim as pled may go to the color and physical attractiveness of the design, which are design features that the regulations do not touch upon. Under these facts, it could be immaterial that five-year-old children would fail to operate the lighter 85% of the time. It could well be that ten-year-old children could operate the lighter 100% of the time. However, if a jury concluded that a lighter could be designed so as to be equally utilitarian and easy to use for adults as the federal regulations specify, yet be less physically alluring to children, Frith would state a claim that did not touch upon the mechanical operations required under the federal regulations.

¶22. BIC's argument that allowing this cause of action to go forward would destroy the benefits of the consumer protection regulations is spurious. The results BIC predicts would, at worst, be that all manufacturers of the means to light tobacco would be compelled to make their products as safe as is achievable with current technology. This result would be consistent with the Consumer Protection Act. This case should be reversed and remanded for trial on the merits.

### LEE AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.

1. 15 U.S.C.A.§2074(a) (1997), **Liability at common law or under State statute not relieved by compliance:**

> Compliance with consumer product safety rules or other rules or orders under this chapter shall not relieve any person from liability at common law or under State statutory law to any other person.

2. 15 U.S.C.A.§ 2072(c) (1997), **Remedies available:**

> The remedies provided for in this section shall be in addition to and not in lieu of any other remedies provided by common law or under Federal or State law.